ROBERTSON, Justice.
The appellant, St. Andrew’s Episcopal Day School, a charitable corporation, brought suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against Appellee Walsh Plumb *923 ing Company, the contractor of the mechanical work, and Appellee The Trane Company, the manufacturer of the major portion of the air conditioning system installed in the new Day School building. The suit was one for breach of warranty or guaranty. The chancellor, after a full trial, dismissed the bill of complaint, and the Day School appeals from this judgment.
On April 8, 196S, appellant entered into a contract with Walsh Plumbing Company whereby, in consideration of $149,420, Walsh agreed to:
“furnish all of the materials and perform all of the work shown on the Drawings and described in the Specifications entitled: Item II, Mechanical Construction, St. Andrews Episcopal Day School, Old Canton Road, Jackson, Mississippi.”
The General Conditions of the Contract provided in Article 20:
“CORRECTION OF THE WORK AFTER SUBSTANTIAL COMPLETION
“The Contractor shall remedy any defects due to faulty materials or workmanship and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of Substantial Completion as defined in these General Conditions, and in accordance with the terms of any special guarantees provided in the Contract. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this Article shall be decided by the Architect subject to arbitration, notwithstanding final payment.”
The Construction Specifications, in Paragraph 22 of Mechanical Construction, required :
“This contractor shall guarantee each and every part of all apparatus entering into this work to be the best of its respective kind and he shall replace within one year from date of completion all parts which during that time prove to be defective and he must replace these parts at his own expense.
“He shall guarantee to install each and every portion of the work in strict accordance with the plans and specifications and to the satisfaction of the owner.
“Guarantee to include replacement of refrigerant loss from air conditioning and refrigerant system.” . (Emphasis added).
On August 19, 1966, Lomax, North and Beasley, consulting engineers, by letter, advised Biggs, Weir, Neal & Chastain, architects, that the mechanical contractor should furnish “as built drawings which locate all underground piping and clean-outs, framed operating instructions in the boiler rooms, CFM figures for all air units, and certification that all safety valves and devices have been tested.” The engineers ended their letter with this comment :
“Other than the above, we feel that the mechanical work is ready for final certification, subject to contract guarantee provisions.”
On August 30, 1966, the engineer wrote the architects:
“Final inspections of the subject project have been completed and we recommend final certification of the mechanical contract, subject to contract guarantee provisions.”
In accordance with the requirements of Paragraph 22 of the Construction Specifications, on August 16, 1966, Walsh Plumbing Company wrote St. Andrew’s Episcopal Day School:
“We hereby guarantee all work performed by us on the above captioned project to be free from defective materials and workmanship for a period of one (1) year, unless called for in the specifications to be a longer period of time.”
*924 Between August 16, 1966, and July 17, 1967, Appellee Walsh was called on several times to remedy defects in the air conditioning system, and Walsh always responded promptly. On July 17, 1967, the air conditioning system broke down completely and ceased to function. The headmaster, the Reverend j4mes, immediately tried to contact Ray Walsh, only to find that he was out of town. Mrs. Walsh suggested that the School call somebody else.
During the first two weeks of July, 1967, James E. Davis, Jr., operator of Davis-Trane Service Agency and also a salesman and representative of The Trane Company, was contacted by John B. Walsh and together with Mr. Walsh attempted to determine why the air conditioning system was not cooling. Mr. Davis described the meeting that took place on July 18, 1967, in these words:
“[TJhe meeting that we had on a particular day at the school, in which Mr. Nicholson was there, and Mr. Ray Walsh was there, and Mr. Nicholson said, ‘We want to get this thing fixed,’ and Mr. Walsh told me to fix it. He said, ‘You have the people, the personnel and the know-how, you go ahead and do it and I will just stay out of it,’ so Mr. Nicholson said, ‘Okay, Davis-Trane Service Agency, go ahead and fix this machine.’ ” (Emphasis added).
Forrest G. North, the mechanical engineer, testified that the failure of two safety devices, the flow control switch and the freeze protection thermostat caused the copper tubes inside the chiller shell and the shell itself to rupture. The purpose of the flow control switch was to prevent the operation of the machine when there was no circulation of water in the chiller shell. The flow control switch was installed by Walsh outside the chiller and was not Trane equipment. The freeze protection thermostat was a Trane part, and was installed inside the chiller unit by Trane at its factory.
The repairs made by Davis-Trane Service Agency pursuant to Ray Walsh’s instructions to Davis to go ahead and fix it amounted to $6,813.05. One of the major items of expense was a new chiller unit purchased from the Trane Company. The Trane Company and Davis-Trane billed the appellant, and the appellant paid Trane separately for the new chiller unit, and Davis-Trane for all the repairs.
The appellant is in the business of running a Christian day school; it is not in the air conditioning business. Appellant does not profess to have any knowledge or expertise about air conditioning systems or equipment. That was the main reason for the provision in the Construction Specifications that the mechanical contractor “shall guarantee each and every part of all apparatus entering into this work to be the best of its respective kind, and he shall replace within one year from date of completion all parts which during that time prove to be defective and he must replace these parts at his own expense.”
Walsh was a reputable, responsible and knowledgeable contractor of mechanical work; and when Lomax, North and Beasley, consulting engineers for the Day School, recommended to the appellant that the bid of Walsh Plumbing Company be accepted, the duty and responsibility was placed squarely on Walsh’s shoulders to purchase and properly install the best air conditioning system on the market. Not only was Walsh to purchase and install, he was to guarantee the system and its installation for one year. This was what Walsh contracted to do, and this was what the appellant paid Walsh to do. Not knowing anything about air conditioning systems, the appellant employed experts in this field and reposed full confidence in these experts to look after its interests.
The chancellor was correct in finding that the breakdown of the air conditioning system occurred “within the time of the warranty by Walsh,” and that the repairs were made necessary to properly repair the system.
*925 The chancellor was in error in holding that:
“St. Andrews never gave any written notice or made any demand on Walsh to comply with his warranty to fix the machine, which would be as I hold a condition precedent to hiring someone else to do the work.”
The sole purpose of notice is to give the contractor who selected, purchased and installed the system the first opportunity to remedy the defects at the least possible expense to him. Appellee Walsh was given this opportunity.
The evidence is undisputed that Walsh was at the Day School building on July 18, 1967, the day after the breakdown, with James E. Davis, Jr., of Davis-Trane Service Agency and John W. Nicholson of the Day School. Davis, called as an adverse witness by the appellant, testified that Ray Walsh said at that time:
“ ‘Yott have the people, the personnel and the know-how, you go ahead and do ' it and I will just stay out of it’ * * (Emphasis added).
Walsh was afforded the opportunity of doing the work himself or employing somebody else to do it. With full knowledge and full notice he chose to employ Davis to go ahead and remedy the defects and make the necessary repairs.
Appellee Trane was the major supplier of items and equipment going into the air conditioning system and Trane was well paid for these. It is unfortunate that Trane’s one-year guaranty to Walsh had run out at the time of the complete breakdown of the air conditioning system. Trane guaranteed the items and equipment furnished by it for one year from the date of shipment; these parts and equipment were shipped in March, 1966. The complete breakdown did not occur until July, 1967. The chancellor was correct in holding that Trane’s warranty had expired.
The chancellor found that $6,813.05 was “a reasonable amount to make the repairs” and put the air conditioning system back in operation.
The judgment of the chancery court is affirmed as to Appellee The Trane Company, but the judgment is reversed as to Ap-pellee Walsh Plumbing Company, and judgment is rendered against Walsh Plumbing Company on its warranty for $6,813.05, together with 6% interest from July 17, 1967.
Judgment affirmed as to the Trane Company, but reversed and rendered as to Walsh Plumbing Company.
GILLESPIE, P. J., and JONES, BRADY and INZER, JJ., concur.